U.S. MAGISTRATE JUDGE J. KELLEY ARNOLD

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT TACOMA**

| | |
|---|---|
| DUANE BOYLE, through his guardians Marion and Robert Boyle, et al., | NO.  C01-5687 JKA |
| Plaintiffs, | AMENDED ORDER AND SETTLEMENT AGREEMENT |
| v. | |
| SUSAN N. DREYFUS, in her official capacity as the secretary of the Washington Department of Social and Health Services, | |
| Defendant. | |

This matter is before the Court on the parties' Joint Motions to amend the Settlement Agreement in the above-captioned action by extending the implementation and monitoring period until July 1, 2012.

## I.  INTRODUCTION

### A.      Purpose of the Settlement Agreement

The purpose of this Settlement Agreement is to resolve all disputed matters identified in the Fourth Amended Complaint relating to the provision of services under the Medicaid Home and Community-Based Services waiver program (HCBS waiver program) operated and administered by the State of Washington's Department of Social and Health Services (DSHS), Division of Developmental Disabilities (DDD) including, but not limited to:

1.      Freedom of choice;

2.      The provision of HCBS waiver services with reasonable promptness; and

3.      Due process.

**B.      Conditions of Settlement Agreement**

1.      The parties in *Boyle v. Arnold-Williams*, Cause No. C-01-5687-JKA enter into this Settlement Agreement ("Agreement") with the goal of ultimately resolving the claims brought on behalf of the four individual Plaintiffs, Disability Rights Washington, and the Settlement Class regarding the HCBS waiver programs for people with developmental disabilities.

2.      The terms of this Agreement shall apply to the State's current HCBS waiver programs and successors.  The terms of this Agreement do not limit the ability of DSHS to legally modify, revise or terminate the HCBS waiver programs consistent with federal Medicaid law and Due Process, or other applicable laws.

**II. TERMS OF AGREEMENT**

**A.      Definitions**

1.      "Plaintiffs" for purposes of this Settlement Agreement only, means the four individual Plaintiffs, Duane Boyle, Douglas J. Fenner, Dennis O'Neill and Alisha Presson, Disability Rights Washington and the Settlement Class.

2.      "Defendant" for purposes of this Settlement Agreement only, means the Secretary of the Washington State Department of Social and Health Services, in her official capacity and any successor(s).

3.      "Waiver data base" means the waiver enrollment data base maintained by DDD that includes the names of waiver participants whose current health and welfare needs cannot fully be met on their current waiver.

4.      "Comprehensive needs assessment" means an assessment or series of assessments designed to assess all the health and welfare needs of an individual waiver participant, whether or not those needs may be met on the waiver on which the participant is placed, including but not limited to, whether there is a residential and/or day habilitation need.

5.      "Individual Support Plan" is the same as "Plan of Care" and means the written document which DDD uses to document the health and welfare needs identified in the comprehensive needs assessment and to identify the services intended to meet those needs.

6.      "Plaintiffs' counsel" means Columbia Legal Services and attorneys for the Disability Rights Washington.

7.      "Waiver participant" means the DDD clients enrolled on one of the four HCBS waivers.

8.      "Settlement class" means all current and future HCBS waiver participants in Washington State's Medicaid Home and Community Based Waiver programs for people with developmental disabilities.

**B.      Defendant's Obligations**

**1.      Assessment**

(a)      Defendant agrees that all HCBS waiver participants shall have annual comprehensive needs assessments (as defined in this Agreement) to determine current health and welfare needs.  The comprehensive needs assessment must, at a minimum, evaluate each participant's health and welfare needs regardless of the specific HCBS waiver in which the participant is enrolled.

(b)     By April 1, 2007, Defendant agrees to adopt regulations requiring that all HCBS waiver participants have an annual comprehensive needs assessment that assesses a participant's current health and welfare needs, regardless of the specific HCBS waiver program in which the participant is enrolled.  Defendant shall provide Plaintiffs' counsel with the current draft proposed regulations and any subsequent proposed draft regulations prior to adoption for consideration of comments from Plaintiffs' counsel.

(c)     Beginning on or about April 1, 2007, or as soon thereafter as the automated comprehensive needs assessment tool is ready for use, Defendant will use the automated comprehensive needs assessment tool when conducting the comprehensive needs assessment for all waiver participants.  If the automated comprehensive needs assessment tool is not ready for use by July 1, 2007, Defendant will conduct comprehensive needs assessments using a different methodology than the automated comprehensive needs assessment tool until the automated tool is ready for use.  Prior to implementation, Defendant will conduct staff training regarding the use of the automated comprehensive needs assessment tool.

(d)     During the period of time that Defendant is training staff on the use of the automated comprehensive needs assessment tool, Defendant agrees to provide Plaintiffs' counsel with a demonstration of the automated comprehensive needs assessment tool.

(e)     By December 1, 2006, Defendant agrees to provide Plaintiffs' counsel with copies of the Defendant's draft Supports Intensity Scale training materials.  By January 1, 2007, Defendant agrees to provide Plaintiffs' counsel with copies of the Defendant's draft Policy and draft Application training materials, and the draft Assessor's manual for Plaintiffs' review and comment. Defendant agrees to provide Plaintiffs' counsel with copies of the

Defendant's draft changes to the HCBS waiver manual, if any, sufficiently in advance of final publication for consideration of comments from Plaintiffs' counsel. Any subsequent proposed changes to the assessor's manual or HCBS waiver manual, if any, shall be provided to Plaintiffs' counsel sufficiently in advance of implementation for consideration of comments from Plaintiffs' counsel.

**2.      Opportunity to change waiver placement**

(a)      Defendant agrees to amend WAC 388-845-0050 to clarify the ability of a waiver participant to apply for enrollment on a different waiver and will incorporate this clarification into the "Approval Notification of HCBS Waiver Assignment" and the "Client Notification of Plan of Care Review" letters (or any similar subsequent letters) and the "DDD HCBS waiver brochure" that will be provided to all waiver participants at the time of their initial waiver assignment or their reassessment.  The above referenced letters shall include a copy of the waiver fact sheet and a description of how to request the form to apply for enrollment on a different waiver.  Defendant shall provide Plaintiffs' counsel with a copy of the draft revised waiver brochure and the above referenced letters before the documents are finalized to allow for consideration of Plaintiffs' comments.

(b)      The Defendant agrees to either create an application form or modify the existing "waiver enrollment request form" (DSHS 15-282a) so that waiver participants can apply to enroll on a different waiver and provide information to support their application.  Defendant agrees to provide Plaintiffs' counsel with a copy of the draft application form or revised "waiver enrollment request form" before the document is finalized to allow for consideration of Plaintiffs' comments.

1     (c)    When DDD receives an application for enrollment onto a different waiver,

2 Defendant will complete the following process:

3     (i)    assess whether the waiver participant applicant has current community

4 based health and welfare needs that are not being met on the waiver in which the participant is

5 enrolled, and that those needs can only be met through services offered on a different waiver.

6     (ii)    once the assessment has been completed, the Defendant shall determine

7 whether current community based health and welfare needs can be met on the waiver in which

8 the participant is enrolled or whether those needs can only be met through services offered on a

9 different waiver.

10     (iii)    if the Defendant determines that the waiver participant's current

11 community based health and welfare needs can only be met through services offered on a

12 different waiver, the Defendant shall then determine whether there is capacity to approve the

13 participant's enrollment on the different waiver.

14     (iv)    the Defendant will notify the waiver participant of its determination

15 regarding subparagraphs (ii) and (iii) as applicable.  The Defendant shall provide adequate

16 written notice of the reasons for the finding and comply with the requirements for Necessary

17 Supplemental Accommodation as described in the DDD Policy Manual, Section 5.02.

18     (v)    waiver participants may file an administrative appeal of determinations

19 under subparagraph (ii) but not determinations under subparagraph (iii).

20     (vi)    waiver participants whose application for enrollment on a different

21 waiver is approved shall be placed on the different waiver and a new Individual Support Plan

22 shall be developed to reflect the change in waiver enrollment and any additional services

23 provided.

24     (d)    Plaintiffs agree that the administrative law judge does not have any authority to

25 order the Defendant to place the waiver participant onto a different waiver.

26

AMENDED ORDER AND SETTLEMENT      6
AGREEMENT - NO. C01-5687 JKA

(e)     Defendant agrees to take appropriate steps to protect the health and safety of HCBS Waiver participants in accordance with WAC 388-845-3080.  Defendant further agrees to use best efforts to maintain participants in community based services and supports, when funds and services are available, while an identified need goes unmet.

(f)     By January 30, 2007, Defendant agrees to discuss with Plaintiffs' counsel current WAC 388-845-0045 (When there is capacity to add people to a waiver…) and its possible revision.

**3.     Individual Support Plan provision**

All HCBS waiver and non-waiver services authorized to meet the assessed need of each HCBS waiver participant shall be documented in the participant's written Individual Support Plan.  HCBS services identified in the Individual Support Plan shall be provided with reasonable promptness.  Defendant agrees to make reasonable efforts to provide needed HCBS waiver services within 90 days of the date a need is identified and incorporated into the Plan.

**4.     Administrative appeals**

The Defendant agrees to provide Notice to waiver participants prior to disenrolling them from their current waiver because the waiver participant does not have a need for all the services on the waiver in which they are enrolled, and that their needs can be met on a different waiver.  Waiver participants may file an administrative appeal if Defendant sends such a notice.  If the administrative law judge makes a finding that the waiver participant has a need for the services that are only available on the waiver in which they are enrolled, and that their needs cannot be met on the different waiver, the Defendant agrees that the waiver participant cannot be moved to the different waiver pursuant to the Notice sent.

**5.     Response to Requests for Services**

(a)     Defendant agrees that it will provide written responses to all oral and written requests by waiver participants for services in accordance with all applicable federal Medicaid requirements.  All denial responses shall be considered "planned action notices" for the

purposes of DDD Policy 5.02 Necessary Supplemental Accommodations, or any applicable successor policy.  For purposes of the Settlement Agreement, the Defendant agrees to follow the procedures set forth in DDD Policy 5.02 when providing written status updates.  The Defendant agrees to provide instructions in the status updates on how to appeal if the participant believes DDD is unreasonably delaying making a decision.

(b)     Defendant agrees to adopt rules consistent with paragraphs B.2. above.

(c)     Defendant shall provide waiver participants with written information in an accessible format and in the person's native language about the services available in the HCBS waiver programs in advance of every annual comprehensive needs assessment and provided at any Individual Support Plan meeting.  Plaintiffs agree that they will not pursue a motion for contempt for a failure to provide the written information in an accessible format and in the person's native language at Individual Support Plan meetings. Defendant shall also explain the assessment process to waiver participants and/or their representatives in advance of the assessment.

**6.     Revision of DDD forms re:  Due Process**

Defendant agrees that all notices and documents provided to waiver participants must comply with all applicable federal Medicaid requirements regarding due process.  By January 30, 2007, Defendant agrees to confer with Plaintiffs' counsel regarding concerns relating to due process and the possible revision of the forms as identified below:

1.     DSHS 14-471;

2.     DSHS 15-272;

3.     DSHS 15-282A;

4.     DSHS 15-283;

5.     DSHS 15-284; and

6.     DSHS 15-292.

AMENDED ORDER AND SETTLEMENT              8
AGREEMENT - NO. C01-5687 JKA

Defendant further agrees that any future changes to these forms or any subsequent forms that replace them, shall be provided to Plaintiffs' counsel prior to implementation with sufficient time for Defendant to take into consideration comments received from Plaintiffs counsel.

**7.      Freedom of choice**

Defendant agrees that all services for HCBS waiver participants must comply with all applicable federal Medicaid requirements regarding the freedom of choice, including the requirements for access to the full range of the particular HCBS waiver services offered under the HCBS waiver program in which a participant is enrolled and for which they have an assessed current health and welfare need.

**8.      Statewide availability**

Defendant agrees that all waiver services identified in an approved Individual Support Plan for HCBS waiver participants must comply with all applicable federal Medicaid requirements regarding statewide availability. Defendant agrees that all HCBS participants shall have access to the full range of HCBS Waiver services offered under their assigned waiver program and for which they have an assessed current health and welfare need. Defendant agrees that assessed current health and welfare needs shall be identified in a participant's Individual Support Plan even if a service is not available locally.

**9.      Quality Assurance**

Defendant agrees to implement a quality management strategy (QMS).  Defendant agrees to provide Plaintiffs' counsel with a copy of the QMS document, the survey tool provided to waiver participants at planning meetings, and the waiver participant audit tool so

that Plaintiffs' counsel may review and comment on these documents at the quarterly meetings. Defendant further agrees that any future changes to these documents shall be provided to Plaintiffs' counsel prior to implementation with sufficient time for Defendant to take into consideration comments received from Plaintiffs counsel. The areas addressed by this QMS will include the following:

(a)     Timeliness of assessments;

(b)     Monitoring of the quality and comprehensiveness of assessments;

(c)     Timeliness, quality and comprehensiveness of plans of care and service plans including reasonable promptness;

(d)     Delivery of services contained in service plans including reasonable promptness;

(e)     Freedom of Choice;

(f)     Verification of provider qualifications;

(g)     Monitoring providers for adherence to waiver requirements;

(h)     Staff Training;

(i)     Monitoring of waiver participants' health and welfare;

(j)     Efforts to identify, address and minimize instances of abuse, neglect or exploitation;

(k)     Oversight of waiver services authorized by DDD and provided by other entities; and

(l)     Due Process compliance.

QMS documents identified and provided under this section may not be used by Plaintiffs' counsel in any subsequent litigation, other than seeking court review under section D of this Settlement Agreement. Nothing in this Settlement Agreement, however, prevents Plaintiffs from using these QMS documents in subsequent litigation where Plaintiffs are able to obtain this information or reports by means other than through this Settlement Agreement. This Settlement Agreement does not prevent the Defendant from asserting any defenses or making any objection as to the validity or admissibility of evidence concerning QMS documents or information obtained from means other than this Settlement Agreement.

**10.** **Plaintiffs' Input To Proposed Change to Regulations, DDD Policies , and/or Management Bulletins Affecting Due Process, Reasonable Promptness and Freedom of Choice**

(a)      Proposed changes, additions or deletions to Washington Administrative Code Chapters 388-845, Chapter 388-828 or any recodifications thereof, or DDD policies or management bulletins relating to "due process, reasonable promptness or freedom of choice," shall be submitted to Plaintiffs' counsel for review and comment.  DDD shall notify Plaintiffs' counsel of the proposed changes, provide a description of the proposed change(s), and the reason for the proposed change(s).

(b)      Prior to implementation of any changes referenced in the preceding paragraph, Plaintiffs counsel may request an opportunity to confer with DDD staff to discuss such changes.  Upon receiving such a request Defendant agrees to provide a reasonable opportunity for this conference to occur, unless the Defendant is adopting an emergency rule. If the Defendant adopts an emergency rule, Defendant agrees to confer with Plaintiffs' counsel  at the earliest opportunity after the rule is implemented.  If after conferring, the parties are unable

to resolve any disputed matters regarding the changes made, Plaintiffs may use the dispute resolution process identified in section D.

**11.      General provisions**

The Defendant agrees to use best efforts to make the DDD Manuals relating to HCBS waivers and the automated comprehensive assessment tool available to the public online by June 30, 2007, or as soon thereafter as possible.

**C.      Waiver Compliance and Tracking**

1.      All records, data, documents or other information reasonably available to the Defendant and requested by Plaintiffs' counsel, necessary to evaluate Defendant's compliance with the terms of this Agreement shall be made available by Defendant, for Plaintiffs' counsel review, within a reasonable time after a written request, provided that the documents requested would otherwise be discoverable under the Federal Rules of Civil Procedure and subject to the existing Protective Order filed in this case.   Plaintiffs may request a copy of the requested information, at Plaintiffs expense of $.08 per page.

2.      During the period of this Agreement, Defendant agrees to generate and provide to Plaintiffs' counsel nine (9) random samples of the waiver participants, upon thirty (30) days written notice from Plaintiffs' counsel.   Plaintiffs agree to not send such notices more frequently than at 4 month intervals.   All random samples shall result in a 95% confidence level with a margin of error of 5%, unless Plaintiffs' counsel notifies the Defendant that a larger margin of error will be used. The parties will work together to develop a method of selecting the random sample so that it may be proportionately representative of each waiver and each region, if possible.   Plaintiffs' counsel will notify Defendant within seven (7) days of

receipt of the random sample which waiver participant records Plaintiffs' counsel will review. Defendant agrees to provide Plaintiffs' counsel access to the DDD records of waiver participants identified by Plaintiffs' counsel from the random sample within thirty (30) days after notification by Plaintiffs' counsel. Plaintiffs' counsel will be given access to these records at the local regional offices of DDD where they are maintained in the regular course of business.  Upon the request of Plaintiffs' counsel, Defendant shall provide copies of any or all of these records in the random sample at Plaintiffs expense at a cost of .08 cents per page.

3.  During the period of this Agreement, every six (6) months Defendant shall provide *Boyle* reports to Plaintiffs' counsel.  The first report shall be provided November 1, 2007 or 180 days after the implementation of the automated comprehensive assessment tool, whichever is later.  These reports shall be prepared and delivered to Plaintiffs' counsel at Defendant's expense.  The reports shall consist of the following:

(a)     information demonstrating reasonably prompt provision of waiver services;

(b)     information showing waiver participants' movement between waivers;

(c)     information reflecting the number of people who Defendant has identified as having assessed current health and welfare needs that cannot be met on their current waiver;

(d)     number of participants requesting to move to a different HCBS Waiver;

(e)     reports prepared by the Defendant's Quality Assurance and/or Quality Compliance team during the reporting period that relate to the provision of HCBS waiver services with reasonable promptness, freedom of choice and due process.

1          (g)     current number of participants in the HCBS waivers;

2          (h)     number of applicants who were placed on any HCBS waiver during the

3    reporting period;

4          (i)     the number of appeals, grievances and complaints filed by HCBS waiver

5    participants regarding waiver services during the reporting period and any administrative law

6    judge decisions regarding the provision of services to HCBS waiver participants rendered

7    during the reporting period; and

8          (k)     Formal reports required by CMS during the reporting period.

9          Without prior approval from the Defendant, the reports identified and provided under

10   this entire section may not be used by Plaintiffs in this or any subsequent litigation other than

11   seeking court review under Section D of this Settlement Agreement.   Nothing in this

12   Settlement Agreement, however, prevents Plaintiffs from using information forming the basis

13   for the *Boyle* reports in subsequent litigation where Plaintiffs are able to obtain this information

14   by means other than through this Settlement Agreement. This Settlement Agreement does not

15   prevent the Defendant from asserting any defenses or making any objection as to the validity

16   or admissibility of evidence concerning the reports, documents or information forming the

17   basis for the *Boyle* reports that is obtained from means other than this Settlement Agreement.

18         4.      The parties agree to meet quarterly through April, 2010, after which point, the

19   parties will communicate quarterly through conference calls provided that either party may ask

20   for an in-person meeting at any time if deemed useful or necessary.   The purpose of these

21   quarterly meetings is so that Plaintiffs' counsel can ask questions regarding the implementation

22   of the Settlement Agreement and/or raise systemic issues that relate to issues involving the

23   provision of HCBS Waiver Services with reasonable promptness, freedom of choice, and due

24   process.  Plaintiffs' counsel will provide a copy of a proposed agenda to Defense counsel for

25   each quarterly meeting at least 14 business days in advance of the meeting.  These meetings

26

AMENDED ORDER AND SETTLEMENT          14
AGREEMENT - NO. C01-5687 JKA

1   will not serve as a substitute for the dispute resolution process as set forth in Section D, below,

2   of this Agreement.

3          **D.**      **Compliance Monitoring and Enforcement**

4          1.      The parties agree that Plaintiffs' counsel shall conduct compliance monitoring

5   for the duration of this Agreement.  Plaintiffs' counsel shall evaluate whether the Defendant

6   has complied with the obligations identified in this Agreement.  Plaintiffs' counsel may submit

7   recommendations for the improvement of systems, procedures, policies or assessment tools

8   relating to the HCBS waiver programs.   Defendants agree to review and consider

9   recommendations submitted pursuant to this paragraph.

10          2.      In order to maintain confidentiality, the existing protective order shall remain in

11   effect during the time that the Settlement Agreement is in effect.  The protective order shall

12   dictate the handling of confidential materials.

13          3.      In the event that Plaintiffs' counsel identifies specific areas of alleged non-

14   compliance with this Settlement Agreement, including either systemic examples of

15   noncompliance or individual examples that may demonstrate systemic non-compliance,

16   Plaintiffs' counsel and the Defendant shall attempt to resolve the issues or issues using the

17   dispute resolution process as follows:

18          (a)     If at any time during the time the settlement Agreement is in effect, Plaintiffs'

19   counsel believe that Defendant is not complying with this Settlement Agreement, Plaintiffs'

20   counsel shall provide Defendant, by and through her counsel of record, with prompt written

21   notice so that she may review the alleged non-compliance.

22          (b)     If there is disagreement regarding the alleged non-compliance, and in order to

23   resolve the alleged non-compliance, the parties may exchange documents, drafts and/or other

24   written communications.

25

26

1    (c)    If the alleged non-compliance is not resolved through the exchange of written
2    documents, Plaintiffs' counsel may request an informal meeting with Defendant and/or her
3    designee to discuss the alleged non-compliance.

4    (d)    In the event Plaintiffs' counsel request an informal meeting, the parties shall, in
5    good faith, attempt to resolve the alleged non-compliance.

6    (e)    If a timely and informal resolution cannot be reached by the parties, Plaintiffs'
7    counsel may request that the parties attend formal mediation to resolve the alleged non-
8    compliance.  Mediation must be requested in writing within 14 days of the informal meeting
9    referenced in paragraph c.  Mediation of the disputed matter shall occur within 45 days of
10   Plaintiffs' counsel's written request for mediation, unless otherwise agreed to in writing by the
11   parties or if the mediator is unavailable.

12   (f)    The mediator to be used will be mutually selected by the parties at the time it is
13   determined that mediation is necessary to resolve the dispute as identified in the proceeding
14   paragraph.  Mediation costs shall be split evenly between Defendant and Plaintiffs.

15   (g)    If, after participating in good faith at the mediation, no resolution is reached,
16   Plaintiffs' counsel may file a motion for contempt seeking to enforce the terms of the
17   Settlement Agreement with the U.S. District Court.  Plaintiffs' counsel shall provide the
18   appropriate notice to Defendant's counsel of such action.

19   (h)    In the event that Plaintiffs' counsel have probable cause to believe that there is a
20   risk of imminent harm to a waiver participant as a result of the Defendant's failure to comply
21   with this Settlement Agreement, Plaintiffs' counsel will consult with Defendant's counsel and
22   the Defendant or her designee to discuss the issue or issues before filing a contempt motion.  If
23   the alleged imminent risk of harm matter is not resolved, Plaintiffs' counsel may proceed
24   directly to Court without first going through mediation.  Plaintiffs' counsel will provide the
25   appropriate notice as provided for under the federal civil rules.

26

AMENDED ORDER AND SETTLEMENT              16
AGREEMENT - NO. C01-5687 JKA

1
2
3
4
5
6
7
8

     **E.**     **Termination of Settlement Agreement and Order and Dismissal of Lawsuit**

     This Settlement Agreement and Order shall terminate and Plaintiffs' claims as identified in Fourth Amended Complaint and occurring before the termination of this agreement shall be dismissed with prejudice on July 1, 2012, provided there are no pending requests for dispute resolution or contempt motions before the Court as provided for in this Agreement.  If there is a pending request for dispute resolution or a contempt motion, this Order and Settlement Agreement shall terminate when the pending motion(s), if any, are resolved.

9

     **F.**     **Fees and Costs**

10
11
12
13
14
15
16
17
18
19
20

     Defendant paid $350,000 in attorneys' fees and costs to Plaintiffs' counsel for time spent and costs incurred on the HCBS waiver claims up until the date of the district court's order approving the original settlement.  Plaintiffs agree they will not seek an award of attorneys' fees and costs for time spent by their counsel in mediation or for preparation for mediation related to the enforcement of this amended Order, or for the monitoring activities that Plaintiffs' counsel or their designees engage in during the time period of this Settlement Agreement.  If Plaintiffs' counsel file a motion for contempt, nothing in this Agreement precludes Plaintiffs' counsel from making a request to the court for attorneys' fees and costs associated with the preparation and prosecution of the motion thereafter, if they are the prevailing party.  Defendants do not waive any defenses relating to a request for attorneys' fees and costs pursuant to Plaintiffs' counsel motion for contempt.

21

     **G.**     **Miscellaneous and Release Provisions.**

22
23

     1.     Nothing in this Agreement shall be considered an admission of liability by any party.

24
25
26

     2.     Except for claims for injunctive or declaratory relief regarding allegations of systemic problems which are to be addressed according to the terms of paragraph 10 of this section, nothing in this Agreement precludes any individual Settlement Class member Plaintiff

from seeking relief or pursuing remedies in administrative fair hearings under RCW 34.05, RCW 71A.10.050 or RCW 74.08.080. The Defendant does not waive any defenses regarding the application of RCW 74.08.080 to appeals under the HCBS waiver.

3.     Upon execution of this Agreement, the Parties may only modify its terms, including but not limited to the timetables for taking specific action, provided that any such modification shall be mutually agreed upon, in writing and signed by all the parties presented to the Court for approval.

4.     The parties will file a Joint Motion to certify a settlement class under Fed. R. Civ. P. 23(b)(2) comprised of all current and future HCBS waiver participants in Washington State's Medicaid Home and Community Based Waiver programs for people with developmental disabilities.  This Settlement Agreement will not take effect if the settlement class is not certified by the Court.

5.     Plaintiffs' counsel shall serve as counsel for the settlement class, provided the district court approves certification of the class as proposed in this Agreement.  The parties further agree that the named Plaintiffs in *Boyle* are adequate representatives of unnamed class members.

6.     The parties agree to jointly prepare a notice of this Settlement Agreement which describes the process for waiver participants to file written objections and includes the date for a fairness hearing.  The notice, after being approved by the Court, shall be sent, at Defendant's expense, to all participants in the HCBS Waiver programs or their legal guardians, if any.  The Defendant shall also make available rooms at the DDD offices around the state for Plaintiffs' counsel to conduct informational meetings about the Settlement Agreement with waiver participants, their parents, guardians and informal advisors.

7.     Defendant shall not enter into any other settlement agreement the effect of which would impair the rights of waiver participants under this Agreement.

8.     This Agreement shall be interpreted and enforced according to the laws of the state of Washington and federal Medicaid law.

9.     Upon termination of this Order and Settlement Agreement, this lawsuit shall be dismissed with prejudice.

10.     During the time period of this Settlement Agreement, the parties agree that concerns, if any, regarding the allegations as set forth in the Fourth Amended Complaint shall be addressed through Plaintiffs' counsel according to the terms of this Settlement Agreement.

11.     Pursuant to this Order and Settlement Agreement, Plaintiffs hereby release and discharge Susan Dreyfus, and her agencies, heirs, successors, administrators, employees, and assigns and the State of Washington from the causes of action and claims for declaratory or injunctive relief regarding the allegations as set forth in the Fourth Amended Complaint occurring prior to the termination date of this Order and Settlement Agreement.

12.     This Agreement does not violate any federal or state statute, rule, regulation, or known common law; but any provision which is found to be invalid or in violation of any statute, rule, regulation, or common law shall be considered null and void, with the remaining provisions remaining in full force and effect.

13.     The parties participated and had an equal opportunity to participate in drafting and/or approval of drafting of this Agreement.  No ambiguity shall be construed against any party based upon a claim that the party drafted the ambiguous language.  The parties represent and warrant that they have full power and authority to enter into this Agreement and to carry out all actions required of them to the extent allowed by law.  Columbia Legal Services' attorneys declare and warrant that they have been given full authority by the legal guardians of Duane Boyle, Douglas J. Fenner, Dennis O'Neill and the court appointed guardian ad litem for Alisha Presson to enter into this Settlement Agreement.  Each party's signature warrants that each party has fully read and agrees to all the terms contained herein.

14.     This Agreement constitutes the entire Agreement of the parties with respect to the subject matter contained herein.   No agreements, representations, oral statements, understanding, or courses of conduct which are not expressly set forth in this Agreement shall be implied or will be binding upon parties unless made in writing and signed by the parties hereto.   This Agreement may not be modified, amended, or enlarged except by a writing executed by the parties.

15.     Except as limited by paragraphs 2, 10 and 11 in this section, nothing in this Agreement shall be deemed to limit the ability of Disability Rights Washington to fulfill its federal mandate pursuant to the "Developmental Disabilities Assistance and Bill of Rights Act," 42 U.S.C. §15041, *et seq.,* and the regulations promulgated thereto, 45 C.F.R. §1386, *et seq.*

16.     Except as limited by paragraphs 2, 10 and 11 of this section, nothing in this Agreement shall be deemed to limit the ability of any settlement class member to seek relief of any kind to which they would be otherwise entitled under state or federal law.

17.     Defendant shall designate at least one person from the DDD Central Office to serve as the person for Plaintiffs' counsel to contact to assist in resolving individual waiver participant's problems relating to HCBS waiver services.

18.     The parties agree that, without prior mutual agreement in writing, all communications made, and documents prepared and exchanged by the parties in an attempt to discuss, or resolve concerns or disagreements, regarding the matters involved in this Settlement Agreement and that are not made or prepared in the ordinary course of business shall be designated as "For Fed. R. Evid. 408 purposes only" and neither party may use such communications or documents in any subsequent litigation other than seeking court review under Section D of this Settlement Agreement.   Nothing in this paragraph prohibits the use of communications made or documents prepared in the ordinary course of business, or the underlying data or written information upon which the Fed. R. Evid. 408 designated documents

1    are based.  This Settlement Agreement does not prevent either party from raising any defenses

2    or making any objection as to the validity or admissibility of evidence concerning

3    communications or documents not covered by the Fed. R. Evid. 408 designation.

4    Dated: _____            Dated: _____

5

6    _____      _____
     Susan Dreyfus, Secretary              Amy L. Crewdson, WSBA #9468
7    Department of Social and Health Services   Columbia Legal Services
                                           Atorney for Plaintiffs Boyle, Fenner,
8                                          O'Neill and Presson and the Settlement
                                           Class
9
                                           Dated: _____
10

11                                         _____
                                           Regan Bailey, WSBA #39142
12                                         Attorney for Disability Rights Washington and
                                           the Settlement Class
13

14                    **III.    ORDER**

15         The Court has reviewed the Motion, including attachments thereto, and the pleadings

16   and other documents on file herein.  Being fully advised and based on the Agreement described

17   above, the Motion to amend the Order and Settlement Agreement is GRANTED.

18   Dated: May 20, 2010.

19

20                                         _____
                                           J. Kelley Arnold
21                                         United States Magistrate Judge

22   Presented by:

23   COLUMBIA LEGAL SERVICES
     /s/  Amy L. Crewdson
24   WSBA No. 9468
     Columbia Legal Services
25   Telephone:  (360) 943-6260, Ext. 214
     Fax:  (360) 754-4578
26   amy.crewdson@columbialegal.org

     AMENDED ORDER AND SETTLEMENT          21
     AGREEMENT - NO. C01-5687 JKA

1  /s/  Gregory D. Provenzano
   WSBA No. 12794
2  Columbia Legal Services
   Telephone:  (360) 943-6260, Ext. 227
3  Fax:  (360) 754-4578
   greg.provenzano@columbialegal.org
4
   DISABILITY RIGHTS WASHINGTON
5  /s/  Regan Bailey
   WSBA No. 39142
6  Disability Rights Washington
   Telephone:  (206) 324-1521
7  Fax:  (206) 957-0729
   reganb@dr-wa.org
8
   /s/  David R. Carlson
9  WSBA No. 35767
   Disability Rights Washington
10 Telephone:  (206) 324-1521
   Fax:  (206) 957-0729
11 davidc@dr-wa.org
   Attorney for Plaintiffs
12
   ROB MCKENNA
13 Attorney General

14 s/Edward J. Dee
   WSBA No. 15964
15 Assistant Attorney General
   Telephone:  (360) 586-6495
16 Fax: (360) 586-6662
   E-mail: edd@atg.wa.gov
17
18 s/William B. Work
   WSBA No. 33824
19 Assistant Attorney General
   Telephone: (360) 586-6496
20 Fax : (360) 586-6662
   E-mail : brucew@atg.wa.gov
21
22 Attorneys for Defendant

23

24

25

26

AMENDED ORDER AND SETTLEMENT          22
AGREEMENT - NO. C01-5687 JKA